Moonlight v. Bond.

Thomas Moonlight v. William H. Bond.

1. Elections; *Culpable Practices; Candidates Furnishing Spirituous Liquors.* In a contested election case, where it was found by the contest court that the successful candidate for sheriff did, pending the election, furnish money to a third person "to be used in the procurement of drinks of spirituous liquors for voters generally, with the intent to facilitate his election," and did various other acts equally culpable, and with like intent, but it was not found or shown that any elector was paid or promised anything for doing any act as an elector, nor was it shown that any judge, clerk, or canvasser of the election was paid or promised anything for doing any act as a judge, clerk, or canvasser of the election, *held,* that a judgment in such a case for the contestee was correct.

2. ———— Such candidate did not forfeit his election under subdivision 4 of section 85 of the act relating to elections, (Gen. Stat. 424,) because of his said acts.

*Error from Leavenworth District Court.*

Proceedings instituted in November 1873 by *Moonlight,* to contest the right to the office of sheriff. The proceedings were commenced in a contest court, composed of Richard R. Rees, probate judge, and George H. English and Lucien Baker, associates. Said contest court found and decided in favor of *Bond,* the contestee. *Moonlight* removed the case to the district court by petition in error. The district court, at the May Term 1874, affirmed the decision of the contest court, and *Moonlight,* as plaintiff in error, now brings the case here.

*Byron Sherry,* for plaintiff in error.

*Stillings & Fenlon,* for defendant in error.

Moonlight v. Bond.

The opinion of the court was delivered by

VALENTINE, J.: This petition in error was brought in this court for the purpose of reversing a judgment of the district court of Leavenworth county, which affirmed a judgment of a certain contest court of said county which held and determined that the defendant Bond was duly elected to the office of sheriff of said county. The only question presented in this court is, whether the judgment of the contest court was and is sustained by the special findings of such court. Said findings, so far as they are material in the determination of said question, are as follows:

"1st. On the 4th of November 1873, Wm. H. Bond, then a candidate for sheriff, at and while the election was proceeding, did give to one Wm. S. Dent, the sum of one dollar in money, then and there to be used in the procurement of drinks of spirituous liquors for voters generally, with the intent to facilitate his (said Bond's) election to the office of sheriff of Leavenworth county.

"2d. While said Bond was so a candidate for sheriff, he (said Bond) did promise to one Tom Bowman five dollars in money for purpose of procuring the services of said Bowman in canvassing for and soliciting and influencing votes for the said Bond for sheriff.

"3d. Said Bond, while such candidate, did say to Tom Bowman, and to other colored people, that so far as he could control, they should have an equal representation upon the juries of this county with others, and that such promise was for the purpose of enhancing his chances of election.

"4th. Said Bond after such election did agree and promise to pay the sum of $9.30 to Bowman & Walker for cigars, drinks, etc., drank and used by sundry persons unknown to said Bond, at and before the time of such election.

"5th. Said Bond at and during such election, on the 4th of November 1873, did agree to and with one Harrison Young and one Peter Green, to pay each of them the sum of five dollars for work at the polls on the day of such election; that is, for the canvassing for votes for the purpose of facilitating his (said Bond's) election to the office of sheriff; and said Bond did pay to said Young and to said Green each the sum of $2.50 thereof, and promised to pay the remainder.

"6th. Said Bond, while canvassing for a nomination for sheriff, did have some conversation with one Lawrence Kiser, in relation to the appointment of under-sheriff, or jailor. And after said election, to-wit, after the said 4th of November 1873, said Bond, in consideration of Kiser's assisting him in procuring surety on his official bond, did promise said Kiser the position of under-sheriff, or jailor.

"7th. Said Thomas Moonlight, the contestor, is and was, at the time of said election, an elector of the second ward of the city of Leavenworth, in the state of Kansas.

"8th. The court do not find that there was, in any case, a bribe or a reward given or offered to any elector, directly, for his vote.

"9th. Said Bond gave to one Lafayette Collins two dollars for canvassing for votes for him (said Bond) on the said election-day, while said Bond was so a candidate for sheriff.

"One witness, Carter, states that Bond had given him one dollar for his vote, (but still denied that he had sold it.) This Bond denies, which makes an equilibrium; but if Bond's interest militates against his statement, it raises reasonable doubt.

"The matter of the license of one Bowman, is entirely too indefinite to make a finding on.

"The evidence of Pemberton, McCormick and McDaniels throw no light upon the issues here, sufficiently important to elicit findings.

"Of the alleged promise of positions to Robert Jackson, Henry Duffy, and William Voss, there is no evidence.

"The testimony of Richard Moore, John Nolan, David Jackson, McAuliff and George Land, and of Miller, are too indefinite to base an action of the court upon, and therefore deemed not of importance in our ultimate determination.

"To sum up the findings of the court in short, they are, that the said Bond did, at, on or before such election, give and offer to sundry electors of Leavenworth county, rewards in money, etc., for the purpose of procuring the influence, coöperation and labor of such electors in facilitating his election, and procuring his success in such election."

It is claimed by the plaintiff Moonlight, that upon the foregoing facts, and under § 85 of the act relating to elections, the judgment of the contest court should have been in his favor, and against the defendant Bond. So much of said section as applies to this case reads as follows:

"The election of any person declared duly elected to any county office, may be contested by any elector of the county: * * * *Fourth*, When the contestee has given or offered any elector, or any judge, clerk, or canvasser of the election, any bribe, or reward, in money, property, or thing of value, for the purpose of procuring his election." (Gen. Stat. 424, § 85.)

Now the record in this case scarcely shows that any one of said persons to whom it is claimed a "bribe or reward in money, property, or thing of value," was "given or offered" by the "contestee," was at any time an "elector;" and the record certainly does not show that any one of them was ever a "judge, clerk, or canvasser of the election." Nor does the record show that any person was ever given, offered, or promised anything for his vote. Indeed, the record does not show that anything was done which could by any interpretation or construction come within the implied prohibition of said statute. Wrongs indeed may have been committed, but they were not such wrongs as come within any of the prohibitory clauses of said statute. This statute was intended to prohibit the bribing of electors, as such, and to prohibit the bribing of judges, clerks, and canvassers of elections, as such; and was not intended to prohibit the paying of money or other valuable things for legitimate purposes connected with the proceedings of a fair election. A candidate for office may certainly pay the publisher of a newspaper for announcing his name as a candidate, although the publisher may at the same time be an elector, and although the publishing of such candidacy may be done intentionally "for the purpose of procuring his [the candidate's] election." So the candidate may also pay for a public hall in which to hold political meetings, and may pay for handbills, and for tickets, etc., etc. He may indeed employ an elector to do anything which might properly be done by any person not an elector. Now, while we do not justify all that is shown to have been done in this case, yet we do not think it is shown that any transaction had in the case was in contravention of any of the provisions of said statute. The first transaction was with Wm. S. Dent.

Now it is not shown that Dent was an elector, or that any one expected that he would offer to vote at said election. And whether he was an elector or not, still he may previously have been a friend of the contestee, and working for his election prior to said transaction. He was expected to procure "drinks of spirituous liquors for voters generally," and not merely for those who could be influenced thereby to vote for the contestee. We might proceed with each of the other transactions mentioned in the findings of the contest court, but we do not think that it is necessary. It is not shown that any elector was paid or promised anything for doing any act as an elector, and it is not shown that any judge, clerk, or canvasser of the election was paid or promised anything for doing any act as a judge, clerk, or canvasser of the election; and therefore, although wrongs may have been committed, yet they not being such wrongs as are prohibited by said statute, the judgment of the court below must be affirmed.

All the Justices concurring.